IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESUS O. HALL, | : | CIVIL ACTION NO. **1:CV-10-1172** |
| | : | |
| Plaintiff | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| J. KOEHN, | : | |
| | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On June 2, 2010, Plaintiff, Jesus O. Hall, an inmate at the United States Penitentiary at Lewisburg, Lewisburg, Pennsylvania ("USP-Lewisburg"), filed, *pro se*, this *Bivens*[1] civil rights action pursuant to 28 U.S.C. § 1331. (Doc. 1). Plaintiff attached several exhibits to his Complaint, including his Affidavit, Ex. A-5. Plaintiff also filed a motion to proceed *in forma pauperis*. (Doc. 2). Plaintiff named only USP-Lewisburg Case Manager ("CSW") Jamie Koehn as a Defendant. Plaintiff alleged that on March 14, 2009, he placed his hands in the food slot of his (SHU) cell to prevent its closing as a way to protest lack of access to the law library and something that was in his lunch tray. Plaintiff stated that he was protesting until the lieutenant

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).   Plaintiff's action falls within 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the United States." (Emphasis added).

This is a *Bivens* action since Plaintiff seeks monetary damages from a federal official for an alleged violation of his constitutional rights. *See Oriakhi v. Wood*, 2006 WL 859543, * 1, n. 1 (M.D. Pa.); *Conway v. Lindsay*, 2009 WL 1956282 (M.D. Pa.). (Doc. 1, p. 1).

came to the SHU to speak to him.  Plaintiff averred that Defendant Koehn asked him why he was holding his slot open and that he then put his arm into the slot with his hands on the metal wicket which lifted up.  Plaintiff alleged that Defendant then became agitated and "intentionally slammed the wicket from the outside and pressed her weight onto it to inflict further injury." (Doc. 1, p. 3).  As a result of Defendant's conduct, Plaintiff averred that his fingers were smashed.  Further, Plaintiff averred that Defendant heard him ask for medical attention and then she "left the range and stood at the gate laughing with other officer."  (*Id.*, p. 4).  Plaintiff stated that the incident occurred at 1:30 pm and that he did not get medical attention until approximately seven (7) hours later.

Plaintiff claimed that Defendant violated his Eighth Amendment rights by slamming the food tray slot door on his left hand.  As relief, Plaintiff requested "the court to charge [Defendant] J. Koehn with assault."  Plaintiff also requested compensatory and punitive damages, as well as damages for "mental and emotional injury."  (Doc. 1, p. 5).

Thus, we construed Plaintiff as raising an Eighth Amendment excessive force claim against Defendant Koehn.

On June 8, 2010, Plaintiff was granted *in forma pauperis* status, and the Clerk of Court was directed to issue Summons and the U.S. Marshal was directed to serve Defendant.  (Doc. 8).  Defendant was served with Plaintiff's Complaint, and after being granted an extension of time to respond to it, on September 15, 2010, he filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for Summary Judgment pursuant to Fed. R. Civ. P. 56(b).  (Doc. 16).

On June 7, 2011, the District Court issued a Memorandum and Order (Doc. 50) and dismissed with prejudice Plaintiff's claim for monetary damages against Defendant in her official capacity.  The Court denied Defendant's Motion to Dismiss Plaintiff's Complaint or, in the alternative, for Summary Judgment.   The Court directed Defendant to respond to Plaintiff's Complaint within thirty days.

On March 23, 2011, Plaintiff also filed a Motion for Stay/Continuance under Rule 56(f) (Doc. 44).     We found that Plaintiff's Doc. 44 Motion was moot, and we dismissed it as such on June 9, 2011.  (Doc. 51).

On July 7, 2011, Defendant filed her Answer to Plaintiff's Complaint with Affirmative Defenses.  (Doc. 53).  Subsequently, we allotted the parties time for discovery in this case.  On August 30, 2011, we issued a Scheduling Order setting the discovery deadline as October 29, 2011, and the dispositive motion deadline as December 29, 2011.  (Doc. 67).

On September 21, 2011, Plaintiff filed 3-page Motion to Compel Defendant to respond to his Second Request for Production of Documents pursuant to Fed.R.Civ.P. 37(a). (Doc. 73). On September 22, 2011, Plaintiff filed 1-paragraph Motion for an Order to Receive Voluntary Interrogatories from Plaintiff's Witnesses.  (Doc. 74).  On September 22, 2011, Plaintiff filed 1-paragraph Motion for Leave to Depose Defendant's Superior Officer pursuant to Fed.R.Civ.P. 45(d). (Doc. 75).

On October 14, 2011, we issued a Memorandum and the following Order:

> Defendant is directed to respond to Plaintiff's **Doc. 73** Motion to Compel **within 10 days** of the date of this Order.  **IT IS ALSO ORDERED THAT** Plaintiff's Motion for an Order to Receive Voluntary Interrogatories from Plaintiff's Witnesses  **(Doc. 74)** is **DENIED.   IT IS FURTHER  ORDERED**

3

>**THAT** Plaintiff's Motion for Leave to Depose Defendant's Superior Officer pursuant to Fed.R.Civ.P. 45(d) **(Doc. 75)** is **DENIED.**

(Doc. 81).

On October 24, 2011, Defendant filed her opposition brief to Plaintiff's Motion to Compel Defendant to respond to his Second Request for Production of Documents with an attached exhibit, namely, her response to Plaintiff's Second Request for Production of Documents.  (Docs. 84 and 84-1).

On November 16*, 2011, we issued a Memorandum and Order and denied Plaintiff's Doc. 73 Motion to Compel.  (Doc. 94).

On November 1, 2011, Plaintiff filed a Motion for Preliminary Injunction or a TRO with Exhibits.  **(Doc. 89).**  Plaintiff styled his 3-page Motion as a "Memorandum of Law to Support Reason of Obtaining an (sic) Preliminary Injunction or a TRO on S.I.A. Perrin and his Staff." (Doc. 89).   However, since Plaintiff did not file any Injunction Motion, we liberally construed Plaintiff's Doc. 89 filing as his motion and brief.  On November 2, 2011, we directed Defendant to respond to Plaintiff's Injunction Motion (Doc. 90), and Defendant filed her opposition brief with Exhibits on November 14, 2011.  (Doc. 93).

## II. Injunction Standard.

Injunctions may issue in only exceptional and extraordinary circumstances.  *Parent v. Whinston*, 347 F. Supp. 471, 472 (E.D. Pa. 1972), *citing Miller v. Standard Nut Margarin Co.*, 284 U.S. 498 (1932).  The grant or denial of a motion for a preliminary injunction is within the sound discretion of the district judge.  *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443, *citing Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.*, 630 F.2d 120, 136 (3d Cir. 1978), *cert*.

*denied*, 449 U.S. 1014 (1980).  A preliminary injunction is not granted as a matter of right.  *Id*.

As Defendant recognizes (Doc. 93, pp. 9-10), the moving party must demonstrate: (1) the likelihood of success on the merits; (2) that the party will suffer irreparable harm by the denial of the injunction; (3) that granting the relief will not result in even greater harm to the other interested party; and (4) the public interest will not be adversely affected by the granting of relief.  *Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987); *In Re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982). "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction."  *Arthur Treacher's*, 689 F.2d at 1143.

A court may not grant a preliminary injunction when the issues raised in the motion for a preliminary injunction are entirely different from those raised in the complaint.  *Stewart v. United States Immigration and Naturalization Service*, 762 F.2d 193, 198-199 (2d Cir. 1985). "Because the purpose of preliminary injunctive relief is to maintain the status quo or prevent irreparable injury pending the resolution of an underlying claim on the merits, the injury claimed in a motion for such relief must necessarily relate to the conduct alleged and permanent relief sought in a plaintiff's complaint."  *Africa v. Vaughn*, Civ. No. 96-649, 1996 WL 677515, at p.1 (E.D. Pa. Nov. 21, 1996) *citing Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Stewart*, 762 F.2d at 198-199; *Penn v. San Juan Hospital*, 528 F.2d 1181, 1185 (10th Cir. 1975).

Thus, as the Court stated in *Hartmann v. Maybee-Freud*, 279 Fed. Appx. 142, 144 (3d Cir. 2008), the Plaintiff in a civil rights action who filed a motion for preliminary injunction "was

required to show that he was likely to succeed on the merits of his claims, that the denial of relief would result in irreparable harm, and that granting the injunction would not result in irreparable harm to the Defendants and was in the public interest."(citation omitted). *See also Ball v. SCI-Muncy*, 2010 WL 4352929, *4 (M.D. Pa. 10-27-10).

In *Ball*, the Court stated:

A preliminary injunction is not granted as a matter of right. *Kershner v. Mazurkewicz,* 670 F.2d 440, 443 (3d Cir.1982) (affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials). It is an extraordinary remedy that places precise burdens on the moving party. As a threshold matter, it is a movant's burden to show that the preliminary injunction is the only way of protecting the plaintiff from harm. *Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 91 (3d Cir.1992). For [a Plaintiff] to sustain his burden of proof under Fed.R.Civ.P. 65, he must demonstrate both a reasonable likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted. *Abu-Jamal v. Price,* 154 F.3d 128, 133 (3d Cir.1998); *Kershner,* 670 F.2d at 443. If the movant fails to carry this burden on either of these elements, the motion should be denied. *Hohe v. Casey,* 868 F.3d 69, 72 (3d Cir.1989).

Irreparable injury is established by showing that Plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm.") Further, immediate irreparable injury is more than merely serious or substantial harm. *ECRI v. McGraw-Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987). "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." *Acierno v. New Castle County,* 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." *Dice v. Clinicorp, Inc.,* 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ...." *Acierno,* 40 F.3d at 655 (citation omitted).

...............................................................................................................

Other considerations in assessing a motion for preliminary injunctive relief is the possible harm to other interested parties if the relief is granted, *see*

6

> *Kershner,* 670 F.2d at 443, and whether the issuance of relief would be adverse to the public interest. *Dominion Video Satellite, Inc. v. Echostar Corp.,* 269 F.3d 1149, 1154 (10th Cir.2001).

*Id.,* *4-*5.

## III. Discussion.

In his Injunction Motion, Plaintiff states that in September 2011, Special Investigative Agent ("S.I.A.") Perrin and Captain Trate went to the Level III SMU Unit at USP-Lewisburg, removed him from his cell, and transferred him to a more restrictive unit for inmates with lower levels and more restrictions. Plaintiff states that he was advised that he used someone's phone (a violation of BOP Code 297) and "that if he didn't drop his pending civil suit he would pay, that his [level in the SMU] Program would be taken and he would be forced to start his 18-24 month lockdown [SMU] Program all over." (Doc. 89, p. 1). Plaintiff claims that he was placed in the more restrictive unit at the prison solely as retaliation for filing his instant lawsuit against Defendant Koehn. Plaintiff also states that after this Court issued its scheduling order with a discovery deadline of October 29, 2011, S.I.A. Perrin allowed him to be transferred to FTC-Oklahoma where he would then be designated to USP-Colorado despite the fact that he had a pending Incident Report against him at USP-Lewisburg for the Code 297 violation. Plaintiff then states that ten days later, he was transferred back to USP-Lewisburg without access to his legal materials, which denied him of his ability to effectively represent himself in this case. Plaintiff avers that S.I.A. Perrin transferred him to punish him for his present lawsuit and to prevent him from effectively prosecuting his present case.

Plaintiff further claims that he was made to start over his SMU Program without being given any of the proper BOP procedures in place before an inmate is made to re-start the SMU Program, including the referral of the redesignation to the SMU Program to the BOP Regional Director, written notice of the decision to the inmate with the rationale for the referral, and an appeal process.  Plaintiff also states that he was not given a DHO hearing before he was made to re-start the SMU Program.  Thus, Plaintiff claims that his procedural due process rights were violated with respect to the decision to make him re-start the SMU Program.  Plaintiff contends that S.I.A. Perrin is carrying out the threat to retaliate against him for his lawsuit by making him re-start the SMU Program and, that Perrin is circumventing BOP policy and violating his due process rights.  Plaintiff further states that his exhibits attached of this Complaint indicate that Perrin was aware of his present lawsuit since Perrin investigated Plaintiff's excessive force claim against Defendant Koehn.

Plaintiff concludes that he is being irreparably harmed by the alleged retaliatory actions of Perrin since after his transfer to a more restrictive unit at USP-Lewisburg, his mail takes 10-14 days to get to him.  Plaintiff also states that he is being irreparably harmed since he was made to re-start the SMU Program for another 18-24 months, confined to 23 hours per day lock down.  Plaintiff seems to request the Court to direct the BOP to allow him to finish his original placement in the SMU Program and to restore ten months of the SMU Program he completed.  Plaintiff also seems to request the Court to place him back in Level III in the SMU Unit, *i.e.* Phase III of the SMU Program, and to restore his Phase III privileges.

Plaintiff's claims that S.I.A. Perrin's alleged retaliatory conduct violated his right to access

the court and his due process rights since Perrin forced him to start the SMU Program over again without giving him notice or a hearing as required. Plaintiff also claims that by making him re-start the SMU Program, Perrin created an "atypical and significant hardship" upon him. Plaintiff states that he was not given the reasons for lowering him from Level III to Level I, subjecting him to more restrictive confinement, and that he was not afforded a DHO hearing with respect to the Code 297 phone offense.

Defendant states that Plaintiff's Injunction Motion should be denied since Plaintiff's claims in his Motion are not related to his excessive force claim at issue in this case and since Defendant Koehn is not personally involved with Plaintiff's new claims. Defendant also contends that Plaintiff has not met the required elements for issuance of an injunction motion.

As discussed above, it is clear that none of Plaintiff's claims raised in his present Injunction Motion against S.I.A. Perrin, who is not a party Defendant in this case, are related to Plaintiff's Eighth Amendment excessive force claim against Defendant Koehn. Plaintiff simply alleges that Perrin was acting in retaliation for his instant lawsuit. We agree with Defendant that Plaintiff's Injunction Motion seeking relief related to the decision to make him re-start the SMU program at Phase I, the beginning, and to remove him from Level III and place him in a more restrictive unit are not in any way related to the operative issue he raised in his Complaint in this action. As such, Plaintiff is not entitled to injunctive relief with respect to his new claims, stated above, which he raises against S.I.A. Perrin. In *Piskanin v. Rendell*, 2007 WL 4554258, *1 (W.D. Pa. 12-19-07), the Court stated:

> [Plaintiff inmate] is not entitled to seek injunctive relief as to these new allegations. *See, e.g., Devose v. Herrington,* 42 F.3d 470, 471 (8th

9

Cir.1994) ("Devose's motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit. Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit."); *Spencer v. Stapler,* No. 04-1532, 2006 WL 2052704, *9 (D.Ariz. July 21, 2006) ("Plaintiff's motion [for injunctive relief] concerns events that are unrelated to the subject of his complaint and that concerns conduct of persons other than the Defendants. Plaintiff's request will therefore be denied."); *Westbank Yellow Pages v. BRI, Inc.,* NO. CIV. A. 96-1128, 1996 WL 255912, *1, (E.D.La. May 13, 1996) ("A preliminary injunction is not an appropriate vehicle for trying to obtain relief that is not even sought in the underlying action."); *Williams v. Platt,* 2006 WL 149024, *2 (W.D.Okla. Jan.18, 2006) ("The complaint addresses two matters at the Logan County Jail: (1) the denial of medical treatment between March and June 2001; and (2) the promotion of an inmate assault on November 8, 2001. In his requests for injunctive relief, the Plaintiff addresses matters at a separate facility, involving harassment, conspiracy, denial of a bottom bunk, and confiscation of legal materials. A preliminary injunction would be inappropriate to address wrongs wholly unrelated to the complaint.") (footnotes omitted).[2]

Moreover, since Plaintiff Hall requests an injunction with respect to his new claims against S.I.A. Perrin, namely, the improper decision to make him re-start the SMU Program from Phase I and to remove him from his Level III housing to a more restrictive housing unit, are not at all related to his Eighth Amendment excessive force claim he raised against Defendant Koehn in his Complaint, he cannot establish a likelihood of success on the merits. *See Murray v. Ennis*, 2011 WL 1483900, *1 (W.D. Pa. 1-21-11) adopted by 2011 WL 1483898 (W.D. Pa. 4-19-11).

---

[2] Defendant cites to the *Devose* case in her brief. (Doc. 93, p. 11). We concur with the *Devose* Court and its above stated finding.

As stated above, Plaintiff also claims that S.I.A. Perrin's alleged retaliatory conduct has denied him his right to access to the court. Based on Plaintiff's many filings in the present case, detailed above, we find that Plaintiff cannot establish a likelihood of success on the merits regarding this First Amendment claim. In fact, Plaintiff's numerous filings he has submitted in the present case belie any claim that he has been denied access to this Court. Also, Plaintiff has failed to show any actual injury to this action as a result of his allegation that he was deprived of his legal materials as required for a denial of access to court claim. Thus, since Plaintiff does not state that any underlying claims were harmed by Perrin's alleged conduct, he fails to state a First Amendment claim for denial of access to the court. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002)(requiring allegations that the document inmate was unable to file was non-frivolous to state an access to courts claim); *Romansky v. Stickman*, 147 Fed. Appx. 310, 312 (3d Cir. 2005)(Non-Precedential)("*Christopher* [case] requires that 'the predicate claim be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope.")(citing *Christopher* at 416).

Additionally, this Court has repeatedly found that an inmate's placement in SMU Program does not violate his due process rights since he had no protected liberty interest at stake and since the SMU Program did not implicate an atypical or significant hardship. *See Mitchell v. Bledsoe,* 696 F.Supp. 2d 454, 470 (M.D. Pa. 2010)(citations omitted).

The *Mitchell* Court stated:

> Inmates do not possess a liberty interest under the Due Process Clause to be classified in a facility of their choosing. *Hewitt v. Helms,* 459 U.S. 460,

11

>468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); *Sheehan v. Beyer,* 51 F.3d 1170, 1175 (3d Cir.1995). The Bureau of Prisons retains sole discretion over where to place an inmate. 18 U.S.C. § 3621. However, as stated above, inmates do have a liberty interest in avoiding transfer to facilities where the conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293. This is not such a transfer. The conditions set forth by Mitchell and the conditions overall in the SMU are reasonable and proportionate to those in other prisons in the federal system and across the country, and do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Furthermore, the undisputed facts establish that placement in the SMU program is not punitive in nature, but rather is designed to provide additional programming opportunities for inmates involved in a disruptive incident. (Doc. 38 ¶¶ 25-29.) As found by this court, "[u]sing restrictions to promote prosocial behavior falls within the parameters of a sentence imposed by a court of law." *Francis,* 2005 WL 2216582, at *5.

In our case, Defendant has shown that Plaintiff began the SMU Program on April 2, 2010, and that after he progressed to Phase 3 of the Program, he was convicted to two high severity misconducts, Code 297 violations. (Doc. 93, p. 4 and Ex. A). Subsequently, Plaintiff was charged with another misconduct report on September 19, 2011, and he is currently waiting for his DHO hearing regarding this report. (*Id.*, pp. 4-5, Ex. A & Att. 4). On October 1, 2011, Plaintiff was returned to Phase I of the SMU Program. Once again, on November 2, 2011, Plaintiff received another misconduct report and it is pending a DHO hearing. (*Id.*, p. 5, Ex. A and Att. 4).

Pursuant to the USP-Lewisburg SMU Handbook, of which Plaintiff attached a page to his Injunction Motion, inmates who are convicted of disciplinary actions in the greatest or high category, will ordinarily be placed back in the previously completed level or all the way back

to Level 1. (*Id.*, Ex. A, ¶ 6). Thus, Defendant 's evidence shows that Plaintiff has placed back to Phase 1 of the SMU Program pursuant to the SMU Handbook due to his disciplinary convictions on high category violations. Therefore, Plaintiff had no liberty interest in avoiding his return to Phase 1 of the SMU Program.

Finally, Defendant argues that Plaintiff has failed to exhaust his BOP administrative remedies with respect to any of his new claims he asserts in his Injunction Motion against S.I.A. Perrin. Defendant has also submitted evidence to show that Plaintiff has not yet exhausted his administrative remedies with respect to his Injunction claims. (Doc. 93, Ex. A, Cunningham Declaration, ¶'s 12- 13). In fact, once Plaintiff exhausts all of his available BOP administrative remedies with respect to his Injunction claims, he can file a civil rights action against the proper parties. Additionally, we find that Plaintiff's claims in his Injunction Motion can all be adequately redressed by a legal remedy after he exhausts his BOP administrative remedies with respect to them.

Thus, we find that Plaintiff's injunction claims are not related to his excessive force claim against Defendant Koehn at issue in this case, that Plaintiff has failed to show irreparable injury if his Injunction Motion is not granted and, that Plaintiff has not demonstrated a reasonable likelihood of success on the merits. Therefore, we will recommend that Plaintiff's Doc. 89 Motion be denied. *See In Re Arthur Treacher's Franchise Litig.*, 689 F.2d 1143; *Ball v. SCI-Muncy*, 2010 WL 4352929, *4.

**IV. Recommendation.**

Based on the foregoing, it is respectfully recommend that Plaintiff's Motion for Preliminary Injunction or TRO **(Doc. 89**) be denied.  Further, it is recommended that this case be remanded to the undersigned for further proceedings.


s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 18, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESUS O. HALL, | : | CIVIL ACTION NO. **1:CV-10-1172** |
| Plaintiff | : | (Chief Judge Kane) |
| v. | : | (Magistrate Judge Blewitt) |
| J. KOEHN, | : | |
| Defendant | : | |

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **November 18, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: November 18, 2011**